JUDGE BATTS

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert E. Wilson III<br>4200 West Page Boulevard<br>St. Louis, MO 63113<br><br>Plaintiff<br><br>v.<br><br>Daniel Valente Dantas,<br><br>Opportunity Equity Partners, Ltd.,<br><br>Opportunity Equity Partners, L.P,<br><br>Opportunity Invest II, Inc.,<br><br>Citigroup, N.A. (f/n/a Citibank, N.A.)<br><br>International Equity Investments, Inc.<br><br>Citigroup Venture Capital<br>    International Brazil, LLC.,<br><br>Citigroup Venture Capital<br>    International Brazil, LP.<br><br>Defendants. | 11 CIV 1936<br><br>JURY TRIAL DEMANDED<br><br>RECEIVED<br>MAR 21 2011<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

Serve:  CT Corporation

1181 8th Avenue, 13th Floor

New York, New York 10011-5252

### COMPLAINT

An action for declaratory, injunctive, and damages relief.

1

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different States, and citizens of different States and citizens or subjects of a foreign state, or citizens and subjects of foreign states as additional parties. The amount in controversy is in excess of $75,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over the defendants Dantas, Opportunity Equity Partners, Ltd., and Citigroup, N.A. because each of these defendants has consented to this Court's jurisdiction as it arises out of or is based upon transactions based upon the Operating Agreement and a Limited Partnership Agreement, and pursuant to N.Y.C.P.L.R. § 302(a).

3. This Court has personal jurisdiction over all defendants pursuant to N.Y.C.P.L.R § 302 because it arises out of transactions that occurred in New York, including but not limited to the Defendants' participation in the execution and implementation of a Settlement Agreement, and simultaneous dismissal of a case in this Court captioned *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, No. 05 Civ. 2745 (JGK).

4. This District is a proper venue for this action pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this action occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District, and this is a judicial District in which Defendants are subject to the personal jurisdiction of this Court and there is no other District in which the action may otherwise be brought.[1]

---

[1] Section 706 of the Operating Agreement provides that the defendants agreed to be subject to the jurisdiction of the federal courts in Manhattan, and made an irrevocable appointment of CT Corporation System, 1633 Broadway, New York, New York 10019 as their authorized agent to accept process for such an action. It also provides that New York law governs the agreement (but does not exclude N.Y. choice of law principles).

## Parties

5. Plaintiff Robert E. Wilson III is a citizen of the State of Missouri.

### The Opportunity Defendants

6. Defendant Daniel Valente Dantas is a citizen of Brazil, and will be included among the "Opportunity Defendants" as that term is used herein.

7. Opportunity Equity Partners, L.P, (OEP, Ltd) is a Cayman Islands limited partnership that is a subject of the Cayman Islands, and will be included among the "Opportunity Defendants" as that term is used herein.

8. Defendant Opportunity Equity Partners, Ltd. (OEP, Ltd.) (formerly CVC/ Opportunity Equity Partners, Ltd.) is a Cayman Islands corporation that is a subject of the Cayman Islands, and will be included among the "Opportunity Defendants" as that term is used herein.

9. Defendant Opportunity Invest II is a British Virgin Island Corporation that is a subject of the British Virgin Islands, and will be included among the "Opportunity Defendants" as that term is used herein.

### The Citibank Defendants

10. Defendant Citigroup, N.A. (f/n/a Citibank, N.A.), is a Delaware Corporation with its principal place of business and residence in the State of New York, and will be included among the "Citibank Defendants" as that term is used herein.

11. Defendant International Equity Investments, Inc. is a Delaware corporation having its principal place of business at One Penn's Way, New Castle, Delaware, and will be included among the "Citibank Defendants" as that term is used herein.

12. Defendant Citigroup Venture Capital International Brazil LLC. (CVC Brazil LLC GP) is a Delaware limited liability company with its principal place of business at 399 Park Avenue, New York, New York, and will be included among the "Citibank Defendants" as that term is used herein.

13. Defendant Citigroup Venture Capital International Brazil, L.P. (CVC Brazil LP Fund) is a Cayman Island limited partnership that was formerly known as Defendant Opportunity Equity Partners, L.P (formerly CVC/ Opportunity Equity Partners, L.P.), and will be included among the "Citibank Defendants" as that term is used herein.

## Common Allegations of Fact

14. In April 2008, Defendants negotiated the winding down and distribution of the proceeds of a complex but successful investment strategy and portfolio commenced in 1997 in investments in Brazilian companies which yielded billions of dollars in profits for distribution in 2008. Even though plaintiff was the person who formulated the original investment strategy, actually made the investments with and on behalf of the defendants, and oversaw the performance of the investments for a decade to bring them to fruition, Defendants denied him any participation in the distribution of the resulting profits in 2008. In so doing, Defendants violated legal duties they owed to Plaintiff, and diverted to themselves tens of millions of dollars to which Plaintiff was entitled.

15. From 1991 until 1997, Robert Wilson was employed at Citibank as head of Citibank's asset redeployment program, a program otherwise known as the debt-for-equity swap program. Mr. Wilson

4

was responsible for converting Citibank's billions of dollars of face value restructured sovereign debt, also known as Brady bonds, into equity, usually through privatizations. Well in advance of Brazil's privatization program, Mr. Wilson structured a proposal to create a large Citibank-sponsored private equity investment fund capitalized with Citibank's Brazilian Brady bonds and focused upon Brazil's privatizations. Mr. Wilson's idea was presented to Citibank's senior management, and in 1997 they authorized him to pursue the structuring and launching of the fund on behalf of Citibank, which he then did.

16. Defendant Citibank assisted in the formation of a General Partner for purposes of the General Partner's sponsoring and managing this Brazilian private equity investment fund.

17. In the spring and fall of 1997, Mr. Wilson took the first steps toward securing this opportunity by arranging for the first investment in a large iron ore company in May of 1997 and in September 1997 a large container terminal at the Port of Santos in Santos Brazil. Citibank funded these investments with the intention that both would serve as the first investments of the new fund known as CVC/Opportunity Equity Partners, L.P. (the fund) that had been created by Wilson in the Cayman Islands for just such a purpose. The term "CVC" in the name of the fund stood for Citibank Venture Capital, and was licensed by Citibank for purposes of marketing the investment program, and or raising capital from other investors.

18. CVC/Opportunity Equity Partners, L.P. eventually raised more than $1.5 billion, with approximately $750 million coming from Citibank, to invest in Brazilian companies, and these and the earlier investments were brought under aegis of the fund's management team. Wilson

to make its investments, and Citibank became a limited partner in the fund. Wilson also created the legal vehicle in Cayman that served as the fund's general partner.

19. After these successful acquisitions, Citibank continued to push forward with plans for structuring the investment program fund as a means of protecting its investments and their prospective returns. In particular, because Citibank wanted to capture the investment premium that accompanies acquisition of control over a company, Citibank wanted to exercise control over the entities that it structured to handle the investments. Accordingly, the lawyers for Citibank drafted a variety of contractual documents in New York and in December 1997 the fund had its closing in New York. The purpose of these agreements was to create a team of managers to regulate the investment of the $1.5 billion. The investors in the fund were Citibank, a number of Brazilian pension funds and Opportunity. Opportunity, an asset management firm controlled by Defendant Dantas, partnered with Citibank in the creation of the fund (CVC/Opportunity Equity Partners, LP) and in the creation of the management company responsible for managing the fund (i.e., the fund's general partner CVC/Opportunity Equity Partners, Ltd. (the GP).

20. Among the documents drafted by Citibank's lawyers was a shareholder agreement for the general partner CVC\Opportunity Equity Partners Ltd,), even though Citibank was not a shareholder in it. Citibank, however, had a business interest in knowing, and controlling, who held ownership interests in the general partner because the general partner would, under the investment structure created by Citibank, be entitled to take as compensation 20% of the profits resulting from all of the investments, commonly known as the "carried interest." As is also

6

customary, Citibank agreed to pay ongoing management and other fees to CVC/Opportunity Equity Partners, Ltd. to compensate it for investment management services. Citibank was the signatory on the various documents but it determined to perform its obligations using its wholly owned subsidiary International Equity Investments, Inc. (IEII). In 2005, IEII took steps to have Defendant CVC Brazil appointed the General Partner of the fund, and the fund was renamed Citigroup Venture Capital International Brazil, LP.Citibank, N.A (Defendant CVC Brazil LP Fund).

21.     Opportunity Equity Partners Ltd.'s Shareholder Agreement (again, drafted by Citibank's lawyers), provided that it shall have 100 shares, of which Plaintiff Robert Wilson would have one share, while three other individuals who were also founding principals of the fund, including Luis Demarco would also have one share (hereinafter "individual shareholders"). The remaining 96 shares were owned by Opportunity Invest II, Inc., controlled by Defendant Dantas. Mr. Wilson was the only individual shareholder not a citizen of Brazil, and was the only individual shareholder with an employment relationship with Citibank.

22.     Opportunity Equity Partners Ltd.'s Shareholder Agreement also barred individual shareholders, including Plaintiff Robert Wilson, from "directly or indirectly transfer[ing], creat[ing], or dispos[ing] of any interest (including a Security Interest) in or over his Ordinary Shares except to a transferee as permitted by this Agreement."

23.     The Shareholder Agreement only authorized the following transfers of shares held by individual shareholders: (i) an individual shareholder could exercise an "irrevocable put option"

7

granted by OEII to sell his share back to OEII; or (ii) OEII could exercise an "irrevocable call option" granted by the individual shareholders to purchase their share. In either instance, call or option was to be "at a price and according to the payment terms and conditions to be agreed pursuant to Annex A."

24. The Shareholder Agreement authored by Citibank's lawyers also provided that its terms were governed by the laws of the Cayman Islands.

25. Beginning in 1997 and continuing through 2008, the fund made numerous acquisitions of Brazilian companies and began managing those companies. As a core principle of investing, all stakes were "control stakes" or represented part of the control group of ownership. The portfolio consisted of some of the largest companies in Brazil, particularly in mining and telecommunications. Plaintiff Mr. Wilson moved to Brazil with his family in 1997 as the official "Citibank liaison" to the fund and as a founding partner of the fund, to take part in the associated investment analysis, decision making, management, and eventual exiting of the portfolio companies. As a result of this investment program, Citibank and the other Defendants obtained billions of dollars in profits.

26. Prior to moving to Brazil in 1997 and while employed at Citibank, Mr. Wilson negotiated an agreement with Defendant Dantas, with the authorization of Citibank, that Mr. Wilson would be entitled to 5% of the carried interest, in other words 5% of the total profits due the general partner from the fund's investments.

8

27. In 1999, Mr. Demarco, an individual shareholder of OEP Ltd., was terminated from OEP Ltd., and he sought to enforce his oral agreement with OEP L.P., also made with Mr. Dantas, as to the value of his interest in OEP Ltd. After OEP Ltd. failed to pay Mr. Demarco for his interest, Mr. Demarco brought suit in the Cayman Islands to enforce his interest.

28. Each level of the Cayman Island's judiciary expressed doubt and frustration with the constantly changing positions of Dantas and OEP Ltd. as to the existence and nature of their obligations to DeMarco. The Cayman Islands courts, and ultimately the Privy Council, ruled that OEP Ltd. had a legal obligation to make a fair offer to Mr. DeMarco for his interest in OEP Ltd., and ordered that the price be determined by a qualified independent expert.

29. In particular, the Privy Council noted that the relations between Mr. DeMarco and OEP Ltd. were alleged to be that of a "quasi-partnership," and this allegation was based on the identified features of a quasi-partnership, including: "(i) a business association formed or continued on the basis of a personal relationship of mutual trust and confidence; (ii) an understanding or agreement that all or some of the shareholders will participate in the management of the business; and (iii) restrictions on the transfer of shares so that a member cannot realize his stake if he is excluded from the business." *CVC/Opportunity Equity Partners Ltd. and Opportunity Invest II Ltd. v. Demarco Almeida*, 2202 CILR 77, para. 36 (Privy Council March 21, 2002). The Privy Council held that, if these features are present, it is "unfair for the majority to insist on their legal right to exclude the petitioner without making a reasonable offer for his shares," and a failure to do so would be "unjust or inequitable." Id. para. 40.

9

30. These features of a quasi-partnership are equally applicable to Plaintiff's relations with Defendant OEP Ltd. and with OEII, such that it is unreasonable, unjust, and inequitable to allow the Defendants to obtain the proceeds of OEP Ltd.'s investment program, while excluding Plaintiff Wilson from any participation in the distribution of those proceeds between and among Defendants.

31. In addition, Defendant Citibank participated in the Demarco litigation by agreeing to guarantee payment of the price determined for Mr. DeMarco's interests in OEP Ltd. upon completion of the independent valuation. In so doing, Citibank acknowledged the obligations running between OEP Ltd. and its individual shareholders that had been crafted and authored by its own lawyers. Indeed, the Privy Council ruling in 2002 gave further notice to the Citibank Defendants of the good faith obligations they had created among OEP Ltd. and its management and shareholders, and the risk that these obligations might not be honored by the Opportunity Defendants.

32. In 2005, Citigroup removed OEP Ltd. from its general partnership position over the fund. Specifically, wholly owned Citigroup subsidiary, Defendant IEII terminated OEP Ltd.'s general partnership status, and appointed Defendant CVC LLC Brazil as its new general partner, a subsidiary of IEII, and renamed the fund CVC Opportunity Investment Partners, L.P., a defendant herein. Prior to the termination, the Citibank Defendants were simultaneously attempting to sell fund portfolio companies in order to obtain their control premium and to prevent Opportunity Equity Partner, Ltd. from obtaining the same premium.

10

33. In addition, the Citibank Defendants (except for Citibank) instituted suit in this District in 2005, pursuant to the agreements Citibank had authored and reached in December 1997 with Dantas and OEP Ltd., seeking to oust OEP Ltd. from the management of the collective funds, and the respective portfolio investments, and from management of the Brazilian corporations that OEP Ltd. controlled by virtue of the fund's ownership interests. Among other claims made by the Citibank Defendants against Mr. Dantas was that he had repeatedly breached his fiduciary and other duties, failing to honor obligations to make payments, thereby further acknowledging the risk of relying upon Mr. Dantas to pay his, or OEP Ltd.'s financial obligations. In their complaint, the Citibank plaintiffs contended that this Court has personal jurisdiction over the defendants Dantas and Opportunity Equity Partners, Ltd because "each defendant consented to this Court's jurisdiction in Article 13.8(b) of the [December 1997 Limited Partnership Agreement] and in Article 7.06 of the Operating Agreement" of the same date.

34. In that lawsuit, No. 05-CV-2745 (LAK, now JLK), Opportunity Equity Partners, Ltd. counterclaimed for, among other things, breach of fiduciary duty, alleging that it was attempting to devise an exit strategy for the portfolio but that the plaintiffs had assumed control over the portfolio by various means, including side deals with the underlying investors and portfolio companies,, purporting to bind the fund prior to the OEP, Ltd.'s termination, thereby interfering with OEP, Ltd.'s investment strategy and blocking its exit strategy.

35. Prior to April 2008, Plaintiff Wilson demanded that he be given notice of the settlement

11

negotiations, participation rights in the discussions, and in any ultimate settlement agreement. Defendants denied these requests.

36.    During and up through mid-April 2008, Dantas and OEP Ltd. represented to Plaintiff that, as part of the settlement negotiations, he would be receiving his 5% interest in the carried interest and all other obligations. Citibank knew of these representations being made by Dantas and OEP Ltd. to Plaintiff, and knew that Dantas and OEP, Ltd. intended to exclude Plaintiff from participating in the proceeds of the Settlement Agreement. Among other things, the Citibank Defendants demanded that the Opportunity Defendants release them from liability for, among other things, their alleged breaches of fiduciary duty to the Opportunity Defendants. The Citibank Defendants conducted the Settlement negotiations to the exclusion of Plaintiff in order to facilitate the circumvention of, and interference with, Plaintiff's contractual rights and business expectancies.

37.    In April 2008, Plaintiff Wilson had a meeting with Mr. Dantas, at which Mr. Dantas assured Mr. Wilson that his 5% carried interests would be recognized, valued, and paid, as part of the settlement negotiations.

38.    In his last meeting with Mr. Dantas in April 2008, however, Mr. Dantas told Mr. Wilson that Dantas had been told by Citibank that Mr. Wilson's payout was too high, and that Citibank indicated that Mr. Dantas should not pay Mr. Wilson the monies promised him.

39.    In late April 2008, the Citibank Defendants entered into a confidential Settlement

Agreement with the Opportunity Defendants. Despite Plaintiff's repeated requests of all Defendants, they have refused to provide Mr. Wilson with a copy of the Settlement Agreement and have refused to provide any explanation of its terms.

40. Beyond a salary, which was itself not paid in full, Defendants have refused to provide any compensation to Plaintiff for his nine years of service in creating, and managing, the investment program in Brazil. By contrast, the Defendants have reaped, as a result of the Settlement Agreement and other transactions, billions of dollars in profits resulting from Plaintiff's legitimate work.

41. On February 4, 2011, Plaintiff Wilson gave notice to the Opportunity Defendants, that he was exercising his irrevocable put option under the Shareholder Agreement, was asking for production of the Settlement Agreement and other relevant financial information, and was asking them to put a price on Mr. Wilson's share within thirty days. The Opportunity Defendants have not provided any response, thereby breaching their contractual and good faith obligations as recognized by the Privy Council.

## Claims

### Count One
### Declaratory Judgment

42. Plaintiff incorporates by reference paragraphs 1 to 41 as though set forth fully herein.

43. Pursuant to 28 U.S.C. § 2201, Plaintiff and the Opportunity Defendants have an actual controversy within the jurisdiction of this Court, and Plaintiff petitions this Court to declare the rights and relations between and among these parties.

44. Specifically, Plaintiff asks this Court to declare the following:

   a. Plaintiff, and the Opportunity Defendants entered into the Shareholder Agreement, and this Agreement created a quasi-partnership relationship among them;

   b. Among other things, the Agreement gave Plaintiff an irrevocable put option to sell his shareholder interest to OEII at a reasonably valued price;

   c. Plaintiff has attempted to exercise his put option, but it has not been honored by the Opportunity Defendants;

   d. In accordance with the rulings and procedures adopted by the courts of the Cayman Islands, and the Privy Council, with respect to shareholder DeMarco, Plaintiff is entitled to have the Opportunity Defendants honor Plaintiff's put option, including by paying Plaintiff a reasonable price for his interest in OEP, Ltd. with the reasonable price being determined by an independent expert; and,

   e. In accordance with the procedure followed by the courts of the Cayman Islands, and the Privy Council, with respect to shareholder DeMarco, defendant Citibank must guarantee the payment by the Opportunity Defendants of reasonable price determined by the independent expert.

## Count Two
## Breach of Contract

45. Plaintiff incorporates by reference paragraphs 1 to 41 as though set forth fully herein.

46. The Opportunity Defendants granted Plaintiff an irrevocable put option, agreeing to buy Mr. Wilson's share interest at a reasonable price.

14

47. Plaintiff has exercised his irrevocable put option, but the Opportunity Defendants have breached their obligation to purchase Plaintiff's share at a reasonable price.

48. As a direct and proximate cause of this breach of contract, Plaintiff Wilson has suffered damages in an amount to be determined at trial, but greatly in excess of $75,000.

## Count Three
## Breach of Fiduciary Duty

49  Plaintiff incorporates by reference paragraphs 1 to 41 as though set forth fully herein.

50. The Opportunity Defendants owed Plaintiff a fiduciary duty as a result of the creation of a quasi-partnership relationship. This duty included the duty of utmost good faith.

51. As fiduciaries, the Opportunity Defendants and the Citibank Defendants owed Plaintiff the duty of utmost good faith.

52. The Opportunity Defendants breached their fiduciary duties to Plaintiff by reaching a Settlement Agreement that excluded Plaintiff from participation in the distribution of proceeds, including the carried interest that had been promised him by the Opportunity Defendants. The Citibank Defendants also owed Plaintiff fiduciary duties by authorizing his interests, including his participation in the carried interest, sending him to create, manage, and multiply fund's monies, creating his interest in the quasi-partnership, and then assuming the general partnership responsibilities for the management of the funds' investments (including Plaintiffs' interests therein). The Citibank Defendants breached their fiduciary duty to Plaintiff by excluding him from participation in the allocation and distribution of the fund's profits. In the alternative, the Citibank Defendants knew of the fiduciary duties of Opportunity Defendants to Plaintiff—Citibank drafted or authorized the documents creating the quasi-partnership relationship and

15

valuing Plaintiff's interests therein, and also participated in the Demarco Caymans litigation were such duties were pronounced by the Cayman Island courts. The Citibank Defendants knew of the Opportunity Defendants' intent to breach their fiduciary duties to Plaintiff, and knowingly provided substantial assistance in order to bring about this breach of fiduciary duty to Plaintiff. The Citibank Defendants directly enticed and participated in the breaches of fiduciary duty by the Opportunity Defendants for their direct benefit and gain.

53. As a direct and proximate result of Defendants' breaches of their fiduciary duties, or the aiding and abetting of same, Plaintiff has suffered damages in an amount to be determined at trial, but greatly in excess of $75,000.

### Count Four
### Tortious Interference with Contract or Business Expectancy

54. Plaintiff incorporates by reference paragraphs 1 to 41 as though set forth fully herein.

55. Defendants had knowledge of Plaintiff's contractual rights and business expectations to obtain a portion of the proceeds that would be distributed as part of the Settlement Agreement, including but not limited to 5% of the carried interest from the investment program.

56. Notwithstanding its knowledge of Plaintiff's contractual rights, employment rights, and business expectations, the Citigroup Defendants, without justification and motivated by malice intending to inflict injury upon Plaintiff by unlawful means, including those alleged in paragraph 53 which is incorporated herein by reference, interfered with these rights by excluding Plaintiff from the Settlement Agreement and its distribution of proceeds, and refusing to give Plaintiff notice of its formation and content, thereby causing the breach and infringement of those rights by the Opportunity Defendants.

57. As a direct and proximate result of Defendants' tortious interference, Plaintiff has

16

suffered damages in an amount to be determined at trial, but greatly in excess of $75,000.

## Count Five
## Unjust Enrichment

58. Plaintiff incorporates by reference one, three, and paragraphs fourteen, fifteen, thirty-nine and forty, as though set forth fully herein.

59. Defendants were unjustly enriched by excluding Plaintiff from participating in the distribution of the proceeds of the Settlement Agreement.

60. Defendants' unjust enrichment was at the expense of Plaintiff.

61. It is against equity and good conscience to permit Defendants to retain the proceeds that should have been distributed to Plaintiff.

62. As a direct and proximate result of Defendants' unjust enrichment, Defendants should disgorge their unjust enrichment to Plaintiff in an amount to be determined at trial, but greatly in excess of $75,000.

## Prayer

For the foregoing reasons, Plaintiff respectfully asks this Court for a declaration of his rights, for an award of damages in an amount to be determined by a jury, plus prejudgment interest, and all other relief as is just and proper.

Respectfully submitted,

Erin Miller Heins, # 0784
Peter Langrock (Pro Hac Admission Application to be Filed)
Langrock, Sperry & Wool
111 S. Pleasant Street
P.O. Box 351
Middlebury, Vermont 05753
802-388-6356

Terrance G. Reed
Pro Hac Admission Application
To be Filed
Lankford & Reed PLCC
120 North St. Asaph St.
Alexandria, VA 22314
703-299-5000

Counsel and Proposed Counsel for Plaintiff